**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------

**MARIA POWELL, on behalf of herself and all others similarly situated**

Plaintiff,

**DOCKET NO.**

v.

**CLAYTON & CRUME, LLC,**

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Defendant.

-------------------------------------------------------------------------

Plaintiff **MARIA POWELL**, ("Plaintiff" or "Ms. Powell,") individually and on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against Defendant CLAYTON & CRUME, LLC ("CLAYTON" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its ecommerce Website, www.claytonandcrume.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff **Maria Powell** is a resident of Bronx County and is permanently disabled due to legal blindness. Ms. Powell suffers from advanced proliferative diabetic retinopathy, a severe and progressive retinal disease recognized as one of the leading causes of permanent vision loss in adults. As documented and confirmed by Dr. Ralph Paternoster, O.D., of Park Professional Eyecare, on February 10, 2026, Ms. Powell's visual impairment meets both federal and New York State criteria for legal blindness. Dr. Paternoster further confirms that Ms. Powell's condition is permanent, incurable, and significantly impairs her ability to visually interpret printed or digital information without assistive technology.

2. Ms. Powell is a proficient user of screen-reading technology and keyboard navigation, which she relies on to access digital environments independently. Because she cannot visually perceive website content without accessible coding, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and screen-reader-compatible navigation in order to browse, evaluate, and purchase goods online. For blind consumers such as Ms. Powell, screen-reading software is not optional; it is the only means by which they can independently access the internet.

3. Plaintiff brings this action against **Clayton & Crume, LLC** for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* Defendant is a Louisville, Kentucky-based manufacturer and retailer of premium handcrafted leather goods and accessories, proudly produced in Kentucky and marketed nationwide through its public-facing website, **www.claytonandcrume.com**. The website is functionally integrated with the company's retail ecosystem, including product browsing, purchasing, customization (including monogramming), promotional content, and customer support. Plaintiff attempted to access these services but was prevented from doing so due to persistent accessibility barriers.

4. Plaintiff is legally blind and relies on screen reader technology to navigate digital interfaces. She attempted to access Defendant's website, **www.claytonandcrume.com**, to browse and purchase premium leather goods for herself and for gifting purposes. On multiple occasions in 2026, Plaintiff encountered widespread accessibility barriers documented by independent SortSite audits, WAVE automated scans, and a broken link report, including:

- **Approximately 787 pages with accessibility problems** out of 4,506 pages and files checked, representing 18% of all checked content — worse than industry average — as confirmed by the SortSite Site Quality Report dated June 13, 2026;

- **800 pages with overall quality issues**, including 786 pages with broken links or other errors, confirmed by the same SortSite audit;
- **793 pages with W3C standards violations**, reflecting pervasive non-compliance with internationally recognized web content standards;
- **19 WAVE-identified errors** on the Belts product page alone, including missing alternative text on product images, empty buttons, unlabeled form controls, and contrast failures — each of which directly prevented Plaintiff from independently evaluating and selecting products;
- **Unlabeled ARIA buttons and interactive controls** across multiple product and collection pages, including those featuring the Ladies Belt, the Everyday Ladies Wallet, and the Classic Tote;
- **Missing or inadequate alternative text** on product images throughout claytonandcrume.com, rendering the site's visual product catalog entirely inaccessible to blind users relying on screen readers;
- **Broken links** throughout the site, including broken navigation paths confirmed by a dedicated Broken Link Report for claytonandcrume.com, which identified numerous failed HTTP targets across product, collection, and informational pages;
- **Inaccessible form fields and checkout elements** that prevented Plaintiff from completing any purchase transaction without sighted assistance;
- **Absolute CSS positioning** causing pages to become unreadable when style sheets are turned off, further impairing screen-reader compatibility;
- **Missing or improper heading structures, skip links, and semantic landmark regions** across category and product pages, depriving blind users of the ability to navigate efficiently.

5. Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate Defendant's Website to be fully accessible to and independently usable by Plaintiff and other blind or visually impaired people. Defendant's denial of full and equal access to the Website, **www.claytonandcrume.com**, and therefore its denial of the goods and services offered

thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

6. According to the U.S. Census Bureau, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind. The American Foundation for the Blind estimates that hundreds of thousands of visually impaired persons reside in New York alone, and that the blind population is disproportionately impacted by inaccessible digital commercial platforms.

7. Congress has issued a clear national mandate to eliminate discrimination against individuals with disabilities. This includes barriers to full integration, independent living, and equal opportunity — barriers perpetuated by websites and other public accommodations that remain inaccessible to blind and visually impaired persons. New York law similarly requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities. The State of New York, through § 760.01 *et seq.* of the New York Civil Rights Act, broadly prohibits disability discrimination in places of public accommodation, incorporating the protections of the ADA.

8. Defendant has long operated its public-facing digital platform as a central gateway to its nationwide retail enterprise, drawing consumers with promises of premium, handcrafted American leather goods. Yet behind the polished branding and artisan craftsmanship lies a website riddled with systemic accessibility failures. Independent audits conducted by Plaintiff's counsel uncovered a pattern of violations that no responsible operator could ignore: product images stripped of alternative text, form fields left unlabeled, navigation elements inaccessible to keyboard-only users, ARIA roles misapplied or omitted altogether, broken links throughout the site's navigational architecture, and the structural absence of skip links or semantic landmarks necessary for screen reader functionality. These are not isolated oversights, but structural defects repeated across hundreds — indeed, the majority — of the website's active pages. Defendant's failure to remediate

its website, despite clear federal guidance, widely available industry standards, and an established remediation pathway through WCAG 2.1, demonstrates a calculated indifference to the civil rights of blind and visually impaired individuals, ensuring that exclusion remains baked into its digital storefront.

9. Plaintiff is deeply invested in maintaining independence in online shopping and relies on product transparency — including accessible alternative text, readable product descriptions, navigable purchase flows, and properly labeled interactive controls — to make informed purchasing decisions. She specifically sought out Defendant's Website because of its reputation for timeless, high-quality leather goods with deep personal and gifting appeal. Clayton & Crume is known for its full-grain Horween leather products, its artisan craftsmanship, and its customization options including monogramming — attributes that make their products particularly meaningful as personal accessories and as gifts for family members. Plaintiff attempted to browse the Website to learn about product details, evaluate leather goods, and complete purchases for herself and others. However, unless Defendant remedies the numerous access barriers, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction on Defendant's Website. Defendant's denial of equal access to its Website constitutes unlawful discrimination under the ADA.

10. Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that its Website becomes and remains accessible to blind and visually impaired users. Such relief is necessary to guarantee equal participation in the digital marketplace and to prevent Defendant from continuing to exclude individuals with disabilities from its online retail services.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 *et seq.*

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York Civil Rights Act, Fla. Stat. § 760.01 *et seq.*

13. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Plaintiff resides in the Bronx, New York, which falls within the Southern District of New York. Plaintiff accessed and attempted to use Defendant's Website from her residence in the Bronx, New York. A significant portion of the discriminatory conduct giving rise to this action — namely Plaintiff's encounters with and deterrence from Defendant's inaccessible Website — occurred within this District. Defendant has availed itself of New York's economic activities by operating and marketing its nationwide Website, **www.claytonandcrume.com**, to New York consumers.

14. Courts routinely support venue placement in the district where the plaintiff attempted and failed to access public accommodation. *See, Chloe NA v. Queen Bee of Beverly Hills, LLC.*, 616 F.3d 158 (2d Cir. 2010); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC.*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021). In *Access Now, Inc. v. Otter Products, LLC*, 280 F. Supp. 3d 287 (D. Mass. 2017), the court held that "although the website may have been created and operated outside of the district, the attempts to access the website in [the forum state] are part of the sequence of events underlying the claim." *Id.* at 294. This satisfies Due Process because the harm — the barred access — occurred within the forum. *Id.* at 293. Here, Plaintiff's attempts to access **www.claytonandcrume.com** from Bronx, New York firmly establish venue in this District.

15. Similarly, in *Access Now, Inc. v. Sportswear, Inc.*, No. 17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), the court found that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth ... Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." *Id.* at *11. Defendants here has availed itself of New York's economic activities by operating **www.claytonandcrume.com** as a nationwide e-commerce platform accessible to and targeted at New York consumers.

16. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, Defendant conducts e-commerce business here through its interactive website, and the discriminatory conduct occurred here.

## THE PARTIES

17. Plaintiff, **MARIA POWELL**, is and was at all relevant times a resident of Bronx, County, New York, located within the Southern District of New York.

18. Plaintiff is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, and the New York Civil Rights Act. She has been diagnosed with **proliferative diabetic retinopathy**, a severe progressive retinal condition causing permanent and irreversible vision loss. Ms. Powell's condition meets the criteria for legal blindness under both State and Federal standards, there are no available treatments capable of restoring her lost vision, and she is entitled to all privileges and accommodations afforded to the legally blind. Plaintiff relies on screen-reading software and keyboard-based navigation to access digital content and remains highly motivated to maintain independence through the use of assistive technology.

19. Upon information and belief, Defendant **CLAYTON & CRUME, LLC** is a limited liability company organized under the laws of the State of Kentucky, with its principal place of business located at 216 S. Shelby Street, Louisville, Kentucky 40202. Defendant owns and operates the website **www.claytonandcrume.com**, which offers consumers nationwide access to its premium leather goods and accessories — including belts, wallets, bags, and lifestyle accessories — as well as product customization, promotional content, and customer support, including to residents of New York.

20. Defendant's website is functionally integrated with its retail ecosystem, serving as the primary gateway for browsing inventory, customizing and personalizing products (including monogramming), learning about the brand's craftsmanship and materials, and completing purchases. Clayton & Crume exercises control over the design, coding, and operation of **www.claytonandcrume.com**. Despite the availability of clear federal guidance, widely adopted industry standards (WCAG 2.1), and well-documented remediation pathways, Defendant has failed to remediate its Website. Independent audits conducted in 2026 — including a SortSite Site Quality Report, a WAVE automated accessibility scan of the Belts product page, and a comprehensive broken link report — revealed pervasive accessibility barriers across hundreds of pages, including broken links, unlabeled buttons and controls, missing alternative text on product images, inaccessible form fields, and structural CSS-positioning defects that cause content to become unreadable when style sheets are disabled. Defendant's nationwide online retail presence establishes that it conducts substantial and continuous commerce within this District and is subject to the jurisdiction of this Court.

## NATURE OF ACTION

21. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of Bronx, New York, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

22. Defendant's website functions as a commercial place of public accommodation subject to Title III of the ADA. At all relevant times, Defendant Clayton & Crume LLC has maintained control over the design, coding, and digital infrastructure of **www.claytonandcrume.com** and is responsible for ensuring its compliance with applicable accessibility standards, including WCAG 2.1 Level AA. Although the Website includes various product pages, collection pages, and informational content, it lacks meaningful ARIA labeling, semantic structure, and keyboard operability across key interactive features, as confirmed by multiple independent audits. These deficiencies render the Website inaccessible to blind users and place Defendant on constructive notice of noncompliance.

23. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike. Defendant's website is not merely informational; it is the primary transactional gateway to its leather goods and accessories business. Without accessible digital access, blind consumers are unable to locate, evaluate, customize, or independently purchase Defendant's products.

24. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content

or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

25. Plaintiff Maria Powell is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 *et seq.*, and the New York Civil Rights Act. She has been diagnosed with **proliferative diabetic retinopathy**, a severe progressive retinal condition that has caused permanent, irreversible degradation of her vision to the level of legal blindness. Plaintiff's condition satisfies the criteria for legal blindness under both State and Federal standards. Plaintiff relies on screen-reading software and keyboard-based navigation to access digital content.

26. Plaintiff attempted to access Defendant's website on multiple occasions from her residence in Bronx, New York. During these visits, she sought to browse product offerings, evaluate leather goods and accessories, and complete purchases for herself and for gifting to family members. Specifically, Plaintiff attempted to purchase the following three products:

**(a) The 3/4" Ladies Belt ($125):** Plaintiff, as a professional woman who takes pride in her personal presentation and wardrobe, was drawn to Clayton & Crume's signature **3/4" Ladies Belt** — a premium full-grain leather belt designed for everyday wear, available in timeless colors that complement virtually any wardrobe. Plaintiff sought this product because it represents exactly the kind of durable, classic accessory that a legally blind consumer values: a long-lasting, high-quality item that does not require frequent replacement and that conveys professionalism and self-sufficiency. For Plaintiff, whose daily routines depend on reliable and consistent personal accessories, the ability to invest in a lifetime-quality piece rather

than continually replacing cheaper goods is both practical and meaningful. However, Plaintiff was unable to independently evaluate this product because the WAVE audit identified **19 errors on the Belts product page alone**, including missing alternative text on the product's images — meaning Plaintiff's screen reader could not convey what the belt looked like, its color options, or its dimensions — along with empty and unlabeled interactive buttons that prevented her from selecting size, color, and monogram options without sighted assistance.

**(b) The Everyday Ladies Wallet ($185):** Plaintiff also attempted to browse and purchase Clayton & Crume's **Everyday Ladies Wallet** — a handmade full-grain leather wallet available with a complimentary monogram of up to three letters, measuring 4" x 8" x 1". For a legally blind consumer, a high-quality, monogrammed wallet is more than a fashion accessory: it is a daily organizational tool that, when personalized, helps Plaintiff identify her belongings independently by touch and by structural familiarity. The wallet's robust construction and lifetime-quality leather mean that Plaintiff would not need to repeatedly navigate an inaccessible website to repurchase the item. Plaintiff was also drawn to the gift customization potential — she wished to order a monogrammed wallet as a personal gift for a family member, an act of personal expression that required her to use the website's customization interface. However, Plaintiff was unable to complete this goal because the Website's form fields and interactive controls for monogramming and checkout were inaccessible to her screen reader, constituting the very type of "inaccessible form field" and "empty button" barrier identified in the WAVE audit and the SortSite accessibility report. Without properly labeled controls, Plaintiff could not enter her initials, select options, or advance through the checkout process without sighted assistance — a direct, traceable connection between the documented accessibility barrier and Plaintiff's inability to complete

her desired purchase.

**(c) The Classic Tote ($395):** Plaintiff further attempted to access information about and purchase Clayton & Crume's **Classic Tote** — a premium full-grain leather tote bag that serves as a functional, elegant everyday carry option. For a legally blind woman who navigates the world with a cane, guide dog, or mobility aids, a well-designed, high-quality tote bag that can carry essential items — including a laptop, medications, screen reader device, and personal effects — is a functional necessity as much as a personal indulgence. Plaintiff was motivated by the Classic Tote's reputation for durability and craftsmanship, which aligns with her preference for investing in quality goods that serve her long-term. She also viewed the Classic Tote as a meaningful gift for a family member. However, Plaintiff was unable to evaluate this product because the SortSite Accessibility Validation Report identified that **collection and product page images lacked adequate alternative text**, and that the site's CSS absolute positioning caused layout to become unreadable when style sheets were disabled — exactly the condition that occurs when a screen reader strips visual styling to read page content. Without functional alternative text on product images or properly structured page layouts, Plaintiff's screen reader could not convey to her the bag's appearance, dimensions, color options, or distinguishing features, directly preventing her from making an informed purchasing decision.

27. These barriers are documented in independent accessibility audits conducted by Plaintiff's counsel: (1) a **SortSite Site Quality Report** for https://claytonandcrume.com/, dated June 13, 2026, identifying 800 pages with overall quality issues, 787 pages with accessibility problems, 793 pages with W3C standards violations, and 786 pages with broken links or other errors — across 4,506 pages and files checked; (2) a **WAVE Automated Accessibility Report** for the Belts product page identifying 19 discrete accessibility errors including missing alt text, empty and unlabeled

buttons, and contrast failures; and (3) a **Broken Link Report** for https://claytonandcrume.com/ confirming numerous failed HTTP navigation targets throughout the site's product, collection, and informational pages. These reports collectively place Defendant on constructive notice of noncompliance and confirm that the Website remains inaccessible to blind users.

28. Plaintiff was specifically interested in purchasing the 3/4" Ladies Belt, the Everyday Ladies **Wallet**, and the **Classic Tote** — all marketed as premium, handcrafted leather goods designed to last a lifetime and to be personalized or gifted. These products were of particular interest to Plaintiff because they represent functional, high-quality items suited to her daily life, her personal expression, and her desire to give meaningful gifts to family members. They are the type of durable, lifetime-investment goods especially valuable to a legally blind consumer who seeks to minimize repeated online purchasing transactions. Due to the Website's failure to provide accessible product images with alternative text, navigable purchase flows, properly labeled interactive form elements, and accessible monogram customization controls, Plaintiff was unable to independently evaluate or purchase any of these items.

29. Plaintiff selected Clayton & Crume over other leather goods brands because of its reputation for exceptional craftsmanship, the timeless and functional nature of its products, and the meaningful personalization options — including hand-stamped monogramming — that make these goods uniquely suited to personal use and gifting. She remains deeply interested in purchasing these products and **intends to return to the Website once it is remediated**, primarily because the quality, durability, and customization of Clayton & Crume's products are unmatched by mass-market alternatives — a major consideration for Plaintiff, who values investing in lasting goods rather than repeatedly replacing cheaper items. Defendant's ongoing failure to provide equal access constitutes a denial of goods and services and causes ongoing deterrence.

30. Plaintiff has suffered concrete harm, including exclusion, frustration, and loss of

autonomy. These injuries are directly traceable to Defendant's conduct and are redressable through injunctive relief. Plaintiff's encounters with Defendant's inaccessible Website demonstrate standing under Title III of the ADA: she attempted to access the Website on multiple occasions, was deterred by systemic barriers, remains eager to return once the site is accessible, and was prevented from purchasing premium leather goods for herself and her family members due to Defendant's negligence and failures.

## CLASS ACTION ALLEGATIONS

31. Plaintiff MARIA POWELL brings this action on behalf of herself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access **www.claytonandcrume.com** and were denied equal access to its products, services, and support due to persistent accessibility barriers during the relevant statutory period.

32. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the State of New York who have attempted to access **www.claytonandcrume.com** and were similarly denied equal access due to the same systemic barriers.

33. Common questions of law and fact exist among the Class, including:

- Whether **www.claytonandcrume.com** qualifies as a "place of public accommodation" under Title III of the ADA;
- Whether Defendant's Website constitutes a "place or provider of public accommodation" under the New York Civil Rights Act;
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support;

- Whether the same barriers violate the New York Civil Rights Act by excluding blind users from meaningful participation in the digital marketplace;
- Whether Defendant has been placed on constructive notice of the Website's accessibility failures by the accumulation of industry standards, federal guidance, and documented audit findings, and has nonetheless failed to remediate.

34. Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms and requires accessible digital interfaces to independently browse, evaluate, customize, and purchase products. She encountered the same systemic barriers — unlabeled buttons, inaccessible forms, missing alternative text, unreadable product descriptions due to broken CSS, and broken navigation links — that affect all Class members.

35. Plaintiff will fairly and adequately represent the interests of the Class. She is a legally blind individual who has personally experienced and been deterred by the accessibility barriers on Defendant's Website. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

36. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the Website's accessibility barriers and ensure equal access to its products and services.

37. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

38. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use **www.claytonandcrume.com** and

faced systemic exclusion due to Defendant's persistent failure to implement accessible design standards.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

39. Plaintiff, **MARIA POWELL**, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

40. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." **42 U.S.C. § 12182(a).**

41. Defendant's website, **www.claytonandcrume.com**, is a service offered to the general public and, as such, must be equally accessible to all potential consumers, including blind and visually impaired individuals.

42. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

43. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege,

advantage, or accommodation being offered or would result in an undue burden." **42 U.S.C. § 12182(b)(2)(A)(ii)–(iii).**

43. The acts alleged herein constitute violations of Title III of the Americans with Disabilities Act and the regulations promulgated thereunder. Plaintiff, a member of a protected class under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been diagnosed with **proliferative diabetic retinopathy**, a severe and progressive retinal condition resulting in permanent, irreversible legal blindness. Plaintiff has been denied full and equal access to Defendant's website, **www.claytonandcrume.com**; has not received services offered to non-disabled patrons; and has been subjected to inferior service due to persistent accessibility barriers. Defendant has failed to take prompt and equitable steps to remedy this discriminatory conduct, and the violations remain ongoing.

44. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(Violations of the New York Civil Rights Act**
**(N.Y. Exec. Law § 290 et seq.)**

45. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

46. The New York State Human Rights Law ("NYSHRL") prohibits discrimination on the basis of disability in all places of public accommodation. N.Y. Exec. Law §§ 292(9), 296(2)(a).

47. Defendant's website is a sales and service platform that constitutes a place of public accommodation under the NYSHRL.

48. Defendant has violated the NYSHRL by denying Plaintiff and other blind consumers equal access to its goods, services, and software due to the presence of pervasive accessibility barriers on its website

49. Defendant's conduct constitutes unlawful discrimination because it subjects blind individuals to inferior access, unequal treatment, and exclusion from the digital marketplace.

50. Defendant's failure to make its website accessible is a direct violation of N.Y. Exec. Law § 296(2)(a), which requires public accommodations to provide equal access to individuals with disabilities.

## THIRD CAUSE OF ACTION
**Violation of the New York City Human Rights Law**
**(N.Y.C. Admin. Code § 8-101 et seq.)**

51. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

52. The New York City Human Rights Law ("NYCHRL") provides broad and independent protections against discrimination on the basis of disability. N.Y.C. Admin. Code §§ 8-102, 8-107(4).

53. Defendant's website is a sales and service platform that constitutes a place of public accommodation under the NYCHRL.

54. Defendant has violated the NYCHRL by denying Plaintiff and other blind consumers equal access to its goods, services, and software due to the presence of accessibility barriers that prevent blind users from navigating, understanding, and interacting with the website.

55. The NYCHRL requires public accommodations to provide equal access and prohibits any practice that results in unequal treatment or disparate impact on individuals with disabilities.

56. Defendant's conduct violates the NYCHRL because it denies blind consumers the ability to independently browse, evaluate, and purchase Defendant's products and to download the Opal Composer software.

57. Plaintiff seeks injunctive relief and all other remedies available under the NYCHRL, which must be construed liberally in favor of civil rights plaintiffs.

## FOURTH CAUSE OF ACTION
**Violation of the New York Civil Rights Law**
**(N.Y. Civ. Rights Law §§ 40–41)**

58. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

59. The New York Civil Rights Law §§ 40 and 41 guarantees all persons, regardless of disability, the equal protection of the laws and the full and equal enjoyment of any place of public accommodation.

60. Defendant's website is a place of public accommodation within the meaning of the Civil Rights Law.

61. By operating an inaccessible website that denies blind consumers equal access to its goods, services, and software, Defendant has violated Plaintiff's rights under N.Y. Civ. Rights Law §§ 40 and 41.

62. Defendant's conduct constitutes a denial of equal access and equal enjoyment of its digital services.

63. Plaintiff is entitled to injunctive relief and statutory damages as provided by law.

**FIFTH CAUSE OF ACTION**
**Declaratory Judgment**
**(28 U.S.C. §§ 2201–2202**

64. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

65. An actual controversy exists between the parties regarding Defendant's ongoing operation of an inaccessible website and its obligations under federal, state, and local disability-rights laws.

66. Plaintiff seeks a declaration that Defendant's website, in its current form, violates Title III of the ADA, the NYSHRL, the NYCHRL, and the New York Civil Rights Law.

67. Plaintiff further seeks a declaration that Defendant must bring its website into compliance with WCAG 2.1 AA or an equivalent standard and must adopt policies to ensure ongoing accessibility.

68. Declaratory relief is necessary to resolve the legal rights and obligations of the parties and to prevent future violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, the New York Civil Rights Act, Fla. Stat. § 760.01 *et seq.*, and all other applicable laws;

b. A preliminary and permanent injunction requiring Defendant to take all steps necessary to make the Website fully compliant with the requirements set forth in the ADA and its implementing regulations, including conformance with WCAG 2.1 Level AA, so that the Website is readily accessible to and independently usable by blind individuals;

c. A declaration that Defendant owns, maintains, and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12182 *et seq.*, and the New York Civil Rights Act, Fla. Stat. § 760.01 *et seq.*;

d. An order certifying the Class and New York Subclass under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclass for violations of civil rights under the New York Civil Rights Act and all applicable federal law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: June 18, 2026
New York, New York

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert L. Schonfeld*

Robert L. Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
(212)227-5700
rschonfeld@employeejustice.com